Roy LaCROIX

v.

David F. WALKER.

No. 2001–350–Appeal.

Supreme Court of Rhode Island.

March 25, 2003.

Michael P. Lynch, Westerly, for Plaintiff.

Lauren E. Jones, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, David F. Walker, appeals from an order granting the plaintiff, Roy LaCroix's, motion for a new trial. The defendant argues that the Superior Court justice overlooked material evidence and clearly was wrong in granting the motion. We heard this case on January 21, 2003, pursuant to an order directing the parties to show cause why the issues raised should not summarily be decided. Having reviewed the record, the memoranda of the parties, and the arguments of counsel, we conclude that the parties have not shown cause, and we affirm the order of the Superior Court granting the plaintiff's motion for a new trial.

On March 1, 1996, defendant entered into a five-year lease for three of plaintiff's units in a building in North Kingstown. The defendant intended to remove the walls separating the units to create space for a Gold's Gym, and the lease contained an express condition precedent: "This lease is expressly subject to Lessee's obtaining a license to operate a Gold's Gym in the leased facility. If Lessee is not granted such license, or, if said license is revoked or terminated, this lease shall terminate forthwith." The defendant and his architect, John O'Hearne (O'Hearne), were not able to agree upon a plan to remove the unit partitions to create space for the gym, and consequently defendant never applied for a license to operate a Gold's Gym. Nor did defendant make any payments of rent to plaintiff.

The plaintiff filed suit on March 27, 1997, alleging that defendant breached their contract. The amended complaint added counts of intentional misrepresentation, negligent misrepresentation, and fraud, as well as a respondeat superior claim against Gold's Gym.[1] The defendant filed a counterclaim alleging misrepresentation, and his answer to plaintiff's complaint included an affirmative defense that he had no obligation under the lease because the condition precedent, obtaining a license from Gold's Gym, never occurred. All claims between plaintiff and defendant were tried before a jury in the Superior Court. The jury heard testimony from, among others, both parties, O'Hearne, and Edward Connors (Connors), the president of the Gold's Gym franchise who oversaw the franchise program.

On the morning of May 24, 2001, the trial justice dismissed all claims, except plaintiff's breach of contract claim against defendant.[2] That afternoon, the jury returned a verdict for defendant on his affirmative defense, agreeing that he had "proven by a fair preponderance that the contract was subject to a condition that he was to obtain a Gold's Gym license prior to the lease becoming effective, and that he acted reasonably to try to get this li-

---

**1.** The claim against Gold's Gym was dismissed on summary judgment, and thus Gold's Gym is not a defendant in this appeal.

**2.** At oral argument before this Court, both parties agreed that because of the dismissal, any new trial would be limited solely to the breach of contract claim, and defendant waived his argument that the trial justice erred in not granting his motion for a new trial on his counterclaim.

cense[.]" The plaintiff moved for a new trial, which the trial justice granted. The defendant appealed.

 Our review of a trial justice's ruling on a new-trial motion involves a different process than the one the trial justice must undertake. *International Depository, Inc. v. State,* 603 A.2d 1119, 1123 (R.I.1992). Our first task is to determine whether the trial justice conducted the proper analysis, and "if a trial justice reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his independent judgment, his determination either granting or denying a motion for new trial will not be disturbed unless he has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Pantalone v. Advanced Energy Delivery Systems, Inc.,* 694 A.2d 1213, 1216 (R.I.1997).

 In this case, the trial justice complied with the process we have enunciated. Using his independent judgment, he reviewed and commented on the evidence and on the credibility of the witnesses. At the hearing on plaintiff's motion for a new trial, he stated, "[defendant] took no actual steps to get that license. Sure he knew he had to have * * * 8,000 square [feet] of open space [to operate a Gold's Gym], but you can't have 8,000 square [feet] of open space [in the three units he leased]. Mr. Connors clearly indicated it could be something less than that * * *. [T]he reality is even though [defendant] says he was given direct statements that he needed 8,000 square feet of open space, the man who's in charge of all this for Gold's Gym said that could be modified in some fashion." The justice further noted that O'Hearne testified that to modify the space "by taking down the walls might cost [defendant] another [$]15-to-$25,000" more than he originally estimated when signing the lease. "That's an insignificant amount," the justice determined, "when you're look-

ing at a minimum [total leasing cost] of $360,000 over five years." After noting his belief that the open-space requirement was not as rigid as defendant maintained, and that defendant could have done more to create open space, the trial justice concluded that "[a]ll [defendant] had to do, realistically, is prepare the plan by O'Hearne, send it to Connor[s] and get a yes or no. If he got a no, he's in safe harbor. Never did it. Seems to me * * * the jury misconceived some of the statements. For that reason, I'll grant a motion for new trial * * *."

 Because the trial justice took the proper steps in making his decision on the motion for a new trial, the question before us is whether he "overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Pantalone,* 694 A.2d at 1216. The defendant argued that the trial justice applied the wrong standard concerning the obligation of a party who enters into a contract containing a condition precedent when he stated "[i]t was [defendant's] obligation to make all necessary steps to get that license." Taken out of context, one could argue that the trial justice misstated the law on conditions precedent. As defendant noted, we interpret such contracts merely to "impose[ ] upon the party required to bring about the happening of that occurrence an implied promise to use good faith, diligence and best efforts to bring about that happening." *Bradford Dyeing Association, Inc. v. J. Stog Tech GmbH,* 765 A.2d 1226, 1237 (R.I.2001). However, taken in context, it was reasonable for the justice to deduce that, to accord with the *Bradford Dyeing* standard, the contract at issue here required that defendant, at a minimum, submit a floor plan and apply to Gold's Gym for a license. Since this was what the justice meant by "all necessary steps," we cannot say that the trial justice was clearly wrong in determining that de-

fendant did not fulfill his duty in trying to satisfy the condition precedent.

The defendant also maintains that the trial justice overlooked material evidence that an application would have been futile and that, had defendant taken down the walls to create space for the gym, the building would violate the fire code. The trial justice's discussion, however, reveals that he did consider defendant's futility evidence. He did not give it much weight, however, because he noted that "the man who's in charge of all this for Gold's Gym said that [the requirements] could be modified in some fashion." This observation was valid, given Connors's testimony, when asked to define "open," that "[i]f it was a series of archways, that would probably be acceptable. If it was like one or two archways, like mouse holes, that would not be acceptable."

Similarly, the trial justice's failure to mention the fire code issue did not constitute an overlooking of material evidence. O'Hearne testified that, despite the local fire official's rejection of a plan he submitted, he could have amended the plan to comport with the fire code, but the defendant was concerned with the cost of such modifications. He also noted that the fire official's decision was appealable. Therefore, the fire code evidence was not inconsistent with, and thus could not materially affect, the trial justice's ultimate conclusion that "[a]ll defendant had to do, realistically, is prepare the plan by O'Hearne, send it to Connor[s] and get a yes or no."

In summary, therefore, we deny the defendant's appeal, and affirm the Superior Court order granting the plaintiff's motion for a new trial. We return the papers in this case to the Superior Court.